## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CR-0100-CVE |
| | ) | (15-CV-0237-CVE) |
| SAMMY JOE PERRYMAN, | ) | |
| a/k/a "Sam Perryman," | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is defendant Sammy Joe Perryman's pro se motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 212). In his § 2255 motion, defendant also requests an evidentiary hearing and appointment of counsel if the Court orders such a hearing. Id. Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

### I.

On July 13, 2011, an eleven-count indictment charged defendant with use of fire and explosive to commit a felony in violation of 18 U.S.C. § 844(h)(1) (count one); arson in violation of 18 U.S.C. § 844(i) (count two); mail fraud in violation of 18 U.S.C. § 134 (counts three through seven); bankruptcy fraud in violation of 18 U.S.C. § 152(1) (count eight); and money laundering in violation of 18 U.S.C. 1957(a) (counts nine through eleven). Dkt. # 2. The indictment alleged that on January 22, 2006, defendant committed arson by burning down a health club that he owned and

committed mail fraud while attempting to recovery property insurance proceeds for the fire.  Id. at 2, 4.   The indictment further alleged that defendant committed bankruptcy fraud and money laundering by concealing property from the bankruptcy court in his Chapter 7 bankruptcy proceedings and engaging in monetary transactions with these concealed funds.  Id. at 8, 10-14. Defendant made his initial appearance on July 28, 2011, at which point a federal magistrate judge appointed panel attorney Martin Hart to represent defendant.  Dkt. # 4; Dkt. # 5.  Defendant entered a guilty plea to counts eight and ten of the indictment and attested that he would present no defense to counts nine and eleven.  Dkt. # 69.  Defendant proceed to trial on the remaining counts one through seven.  Dkt. # 70.

Prior to trial, Hart filed two motions in limine, one of which sought, inter alia, to exclude the expert report and testimony of Lee McCarthy, an ATF employee who had prepared a report for the United States regarding the origin and cause of the fire.  Dkt. # 66, Dkt. # 72.  Hart argued that the United States had previously identified two experts, but did not identify McCarthy until roughly three weeks before the scheduled trial date.  Dkt. # 72, at 3.  McCarthy's report and testimony was expected to relate to the precise time the fire began, while the reports of the two previously identified experts considered only the cause and origin of the fire, including no statements or conclusions as to timing issues.  Id. at 3-4.  Hart objected to the introduction of any evidence or testimony from McCarthy on the basis that the defense did not have adequate time to prepare for this witness.  Id. at 2.  The Court held a hearing on the motions in limine on March 5, 2012, during which it considered defendant's motion to exclude McCarthy's testimony.  Dkt. # 180, at 17.  The Court questioned counsel for both parties about the reports of the previously identified experts and McCarthy and determined that allowing McCarthy's report or testimony in the United States' case

2

in chief would be unfair to defendant, who had limited notice and time to prepare for this witness. Id. at 31-32.  The Court concluded that McCarthy's testimony should be excluded from the United States' case in chief, but explained that if the defense chose to rebut the United States' theory of the case--that Perryman set the fire at roughly 6:00 p.m., but that it smoldered until the first flames were visible at around 11:00 p.m.--the United States would be allowed to introduce McCarthy as a rebuttal witness. Id. at 35.  After the hearing on the motions in limine, Hart retained the services of David G. Lilley, Ph.D., D.Sc., P.E., who prepared a report regarding the onset of the fire, particularly as it related to the precise time the fire began.  Lilley's report challenged the United States' version of events as to timing.  Dkt. # 222-3, at 1.  Hart did not introduce the report or call Lilley to testify at trial.

At trial, Paul Radmilovich, a former health club employee, testified.  Dkt. # 177, at 87.  He testified that he had worked at the health club off and on between 1992 and 2006, and that he had initially been hired by defendant. Id. at 88-89, 91.   He testified that, in January 2003, defendant asked him for a loan of $3,000 to help defendant make payroll. Id. at 102.  Radmilovich testified that he declined to lend money to defendant, explaining to him that he could not afford it. Id. at 103. Radmilovich stated that, although defendant implied that he was not upset that Radmilovich declined lend him money, Radmilovich noticed that he received $100 less than the normal amount on his next two paychecks. Id.  Radmilovich asserted that this, in part, caused his departure from the health club, but that he ultimately returned to work again in 2004, working there until the fire that destroyed the health club. Id. at 89.  He testified as to the general state of disrepair in the months preceding the fire and testified that membership at the health club had dropped of drastically during this time. Id. at 95-96.  On cross-examination, Hart questioned Radmilovich about the state of the

club, repairs defendant made, membership levels, and equipment and other items that had been removed from the club shortly before the fire. Id. at 121-40. Counsel did not question Radmilovich about defendant's request for a loan and the subsequent reduction in pay. See id.

The United States also called several other witnesses to testify about the financial situation of both the health club and defendant. Kathie Harms, who rented space for a salon in the health club, testified that defendant showed her a document that listed several mortgages on the club property. Dkt. # 176, at 18. Michael Gray, a senior vice president and loan officer at Stillwater National Bank, testified as to loans made to defendant. Id. at 58. Paul Thomas, the United States Trustee for defendant's bankruptcy proceedings, testified as to the mortgage on defendant's home. Id. at 51. And Betty Sparks, a former health club employee, testified about the general state of disrepair in the club, collection calls she received while answering the phone at the club, the decline in membership over the period of time leading up to the fire, and the overall declining financial situation of the health club. Dkt. # 177, at 46-48; 61, 65-66.

The jury convicted defendant of counts one through seven. After trial, Hart withdrew as counsel. Dkt. # 137. Perryman subsequently retained Chad Richardson to represent him through sentencing. Dkt. # 143.   Prior to sentencing, the United States Probation Office prepared a pre-sentence report (PSR).   The PSR calculated the intended loss at $1,090,000, which was the maximum amount of the insurance policy based upon the evidence introduced at trial.   After considering the PSR, the Court  granted defendant a one-level variance, which reduced defendant's guideline range to 60 to 71 months imprisonment for counts two through seven and ten, and did not alter the 60 month guideline range for count eight.   Count one carried a mandatory statutory minimum of 120 months imprisonment and count two carried a mandatory statutory minimum of

60 months imprisonment.  <u>See</u> 18 U.S.C. §§ 844(h) and (i).  The Court sentenced defendant to a total term of imprisonment of 180 months.  Dkt. # 154.  The Court sentenced defendant to 120 months for count one, to run consecutively to all other counts, and 60 months each for counts two through eight and ten, to run concurrently, each with the others.  <u>Id.</u>  The Court ordered restitution in the amount of $125,557.  Dkt. # 154.  The Court dismissed remaining counts nine and eleven upon motion of the United States.  <u>Id.</u>  Defendant filed a direct appeal and his conviction and sentence was affirmed by the Tenth Circuit Court of Appeals.  Dkt. # 202.   Defendant filed a petition for a writ of certiorari, which the Supreme Court denied.  Dkt. # 205.  Defendant then filed this § 2255 motion asserting that he received ineffective assistance of counsel during both trial and sentencing.

## II.

Defendant asserts that his trial and sentencing counsel were constitutionally ineffective.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The right to counsel "exists, and is needed, in order to protect the fundamental right to a fair trial."  <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984).  The Supreme Court has long held that "the right to counsel is the right to the effective assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (collecting cases).  This right can be violated in two ways: the government may violate the right if it interferes with defense counsel's ability to act independently; or defense counsel may violate the right "simply by failing to render 'adequate legal assistance.'"   <u>Strickland</u>, 466 U.S. at 686 (quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344 (1980)).  Defendant's arguments relate only to the latter type of violation.

5

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Defendant raises five claims of ineffective assistance in his § 2255 motion, asserting that: (1) his trial counsel was ineffective for failing to call an expert witness retained by the defense; (2)

his trial counsel was ineffective for failing to file a pre-trial motion challenging the arson charge on statute of limitations grounds; (3) his trial counsel was ineffective for failing to cross-examine witnesses with payroll records and mortgage payments; (4) his sentencing counsel was ineffective for failing to object to the loss calculation in the PSR; and (5) his trial counsel was ineffective for failing to object to a violation of the Confrontation Clause.

## A.

Defendant argues (ground one) that Hart was ineffective for failing to call an expert witness that the defense had retained to testify at trial. Dkt. # 212, at 5-7. The defense retained the services of Dr. Lilley, who submitted his own report purportedly refuting the findings of ATF investigators, but Hart did not call Lilley to testify at trial. Id. at 7. Defendant asserts that this amounts to ineffective assistance because Lilley's testimony could have provided reasonable doubt regarding the time the fire began, thus calling into doubt whether defendant could have been at the scene at the critical time. Id. The United States responds that the decision not to call Lilley was strategic in nature and was made after defense counsel successfully argued a motion in limine restricting the testimony of the United States' witnesses. Dkt. # 222, at 9.

Hart's decision not to call Lilley to testify at trial was a strategic decision, made after consideration of the ramifications of introducing Lilley's testimony. During pretrial proceedings, the defense filed a motion in limine, seeking to restrict the testimony of McCarthy, the United States' expert, regarding the time the fire began. The Court ruled in the defendant's favor, excluding McCarthy's testimony, provided that the defense did not open the door by introducing its own evidence regarding the timing of the fire or questioning witnesses on this issue. And Hart, in an

7

affidavit regarding his representation of defendant, explained in detail his strategic decision to not offer the report or testimony of Lilley:

> We retained Dr. Lilly [sic] whose conclusion [sic] were consistent with the defense theory. Our feeling was if we opened the door as to the specific time the fire started it would allow the government to ask their initial expert, Laverman, about the timing of the fire, and it would allow the government to call an additional expert witness, McCarthy (and who authored a report for the government), who would certainly address the issue of the timing of the fire. My thought was to avoid allowing the government to call 2 expert witnesses by not calling our expert witness. I did not believe it was in the defendant's best interests to allow the government to present 2 expert witness concerning the timing of the fire and I did believe Laverman's testimony did minimal damage to the defense. I also did not know how Dr. Lilly [sic] would be perceived at trial by the jury and I was concerned how he might respond to cross-examination by the government.

Dkt. # 222-3, at 1-2. The record shows that Hart decided not to introduce the report or testimony of Lilley after careful consideration of the ramifications of Lilley's testimony. This kind of strategic decision of counsel made during trial is afforded considerable deference. Bullock v. Carver, 297 F.3d 1036, 1046 (10th Cir. 2002) ("[W]here it is shown that a particular decision was, *in fact*, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'"). But there are limits to this presumption, and "it is . . . possible on rare occasions to conclude that counsel's fully-informed strategic choices were unreasonable if 'the choice was so patently unreasonable that no competent attorney would have made it.'" Id. (quoting Phoenix v. Matesanz, 233 F.3d 77, 82 n.2 (1st Cir. 2000)). Here, no evidence supports a finding that Hart's strategic decision was "patently unreasonable." Hart carefully considered the ramifications of introducing the testimony of Lilley and determined, on balance, that defendant would be better served by not calling Lilley to testify. As such, the Court will not second-guess the trial strategy of counsel and cannot conclude that Hart rendered deficient performance. Ground one of defendant's motion should be denied.

**B.**

Defendant argues (ground two) that Hart was ineffective for failing to file a pre-trial motion seeking dismissal of the arson charge based on the statute of limitations.  Dkt. # 212, at 7-8.  Defendant contends that the arson charge was subject to a five-year statute of limitations and that the United States brought this charge outside the limitations period when the fire occurred on January 22, 2006, and defendant was indicted on July 13, 2011.  Id.  The United States responds that defendant erroneously believes the statute of limitations to be five years for an arson charge, rather than the applicable ten years.  Dkt. # 222, at 12.  The United States asserts that defense counsel cannot be deficient for failing to raise a meritless argument.  Id.

Defendant's argument regarding the statute of limitations is simply without merit.  Defendant was charged with arson pursuant to 18 U.S.C. § 844(i).  Dkt. # 2, at 2.  A ten-year statute of limitations, rather than a five-year statute of limitations, applies to this offense.  18 U.S.C. § 3295 ("No person shall be prosecuted, tried, or punished for any non-capital offense under . . . subsection . . . (i) of section 844 unless the indictment is found or the information is instituted not later than 10 years after the date on which the offense was committed.").  Because this is argument lacks merit, Hart did not provide ineffective assistance for failing to raise it.  Cf. Sperry v. McKune, 455 F.3d 1268, 1275 (10th Cir. 2006) (explaining that counsel cannot be ineffective for failing to raise a meritless argument on appeal).  Ground two of defendant's motion should be denied.

## C.

Defendant argues (ground three) that Hart was ineffective by failing to cross-examine a witness at trial regarding payroll records and by failing to introduce mortgage payments to rebut witnesses' testimony. Dkt. # 212, at 8-9. The United States responds that defense counsel was not ineffective for failing to present payroll records and mortgage payments because counsel's decision not to introduce such evidence was a strategic decision regarding cross-examination that is entitled to considerable deference. Dkt. # 222, at 12. The United States also argues that defendant fails to identify specific evidence his trial counsel should have introduced, instead merely speculating about the existence of evidence beneficial to him, thus rendering defendant unable to demonstrate he suffered any prejudice from his counsel's strategic decision. Id.

The health club's former employee, Radmilovich, testified at trial that he had worked at the health club for a number of years and that, in 2003, defendant asked Radmilovich for a $3,000 loan. He testified that when he declined to make the loan, defendant lowered his rate of pay by $100 per pay period. Defendant asserts that Hart was ineffective because he did not introduce payroll records on cross-examination to prove that defendant did not lower Radmilovich's pay. Defendant also asserts that Hart was ineffective for failing to produce loan documents showing defendant was current on his loan payments, when cross-examining several witnesses who provided testimony that defendant was having trouble meeting his financial obligations. Defendant argues, in essence, that Hart's performance was ineffective because he did not cross-examine witnesses in a manner that satisfied defendant.

But how counsel chooses to conduct a cross-examination is a strategic decision that is entitled to strong deference. Anderson v. Att'y Gen. of Kan.,425 F.3d 853, 859 (10th Cir. 2005)

("[S]trategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong.'" (quoting <u>Bullock v. Carver</u>, 297 F.3d 1036, 1047 (10th Cir. 2002))).  And Hart explained that he made a strategic decision not to introduce financial documents because records were poorly kept, defendant had poor recollection of dates and specific records, Hart could not get reliable information from defendant's estranged wife, and Hart felt some of the evidence, particularly Radmilovich's salary, was of minimal value in the face of other evidence the United States' had already presented.  Dkt. # 222-3, at 2.  Hart also explained that "it was pointed out on cross-examination of government witnesses and defense witnesses that [defendant] was current, or close to, on his mortgage payments."  <u>Id.</u>  Hart did not render deficient performance by failing to introduce mortgage payments.  This was a strategic decision regarding whether to introduce specific evidence to rebut witness testimony.  No evidence suggests that Hart's decision not to present this evidence was "completely unreasonable," particularly given that Hart conducted a thorough cross-examination of the witnesses.  And defendant suffered no prejudice from any alleged deficiency when ample other evidence presented at trial established that defendant and the health club had financial difficulties.  This evidence included testimony about the club's general state of disrepair, falling membership rates, and efforts to increase cash flow for the club.  Thus any alleged deficiency in Hart's failure to introduce financial records would not have had a reasonable probability of ensuring a different outcome.  Defendant suffered no prejudice.  Ground three of defendant's motion should be denied.

### D.

Defendant argues (ground four) that his sentencing counsel, Richardson, was ineffective for failing to object to the loss calculation in the PSR.  Dkt. # 212, at 9.  The PSR prepared by the

United States Probation Office prior to sentencing calculated the intended loss at $1,090,000, which was the maximum amount of the insurance policy covering the health club.  Defendant argues that the loss calculation should have been based on his reasonably foreseeable pecuniary gain, which he calculated at $205,000.  Id.  This amount, according to defendant, included the appraisal value of the health club building of $115,000 and a content loss of $90,000.  Id.  Defendant argues that Richardson was ineffective for failing to object to a loss calculation of $1,090,000 because the proper loss calculation was considerably lower at $205,000.  Id.  The United States responds that defendant's argument lacks merit and his counsel cannot be deficient for failing to raise a meritless issue.  Dkt. # 222, at 15.  The United States further asserts that defendant suffered no prejudice from any alleged deficiency because defendant was sentenced to the statutory minimum.  Id.  Therefore, the United States asserts that any error in a loss calculation did not prejudice defendant because he would not have received a lower sentence.  Id.

Richardson did not render deficient performance when he did not object to the PSR's loss calculation.  The PSR stated that the health club was insured in the amount of $1,000,000 for the building and $90,000 for the contents of the building.  And the PSR specifically stated that this was the reasonably foreseeable pecuniary gain, noting that the insured amount was significantly less than the fair market value of the building and its contents.  Defendant argues that Richardson should have objected to the loss calculation because it should have been based on the reasonably foreseeable pecuniary gain.  But the loss calculation was conducted with consideration of defendant's reasonably foreseeable pecuniary gain, despite defendant's assertions to the contrary.  Defendant simply disagrees with the amount of the calculation, asserting that it should reflect the appraisal value of the health club at the time of the fire.  But defendant provides no authority for his assertion that he

12

could recover only in the amount of the most recent appraisal rather than under the policy limits. Richardson was not deficient for failing to object to the loss calculation that considered Perryman's reasonably foreseeable pecuniary gain and accounted for the policy limits under two insurance policies covering the health club.  Further, defendant suffered no prejudice from counsel's alleged failure to object to the loss calculation.   The Court sentenced defendant to a total term of imprisonment of 180 months, which constituted the statutory mandatory minimum for counts one and two.  See 18 U.S.C. §§ 844(h) and (i).   Thus, defendant could not have been prejudiced by Richardson's alleged failure to object to the loss calculation because even a successful objection would not have resulted in defendant receiving a lesser sentence.   Ground four of defendant's motion should be denied.

### E.

Finally, defendant argues (ground five) that Hart was ineffective for failing to object to a violation of the Confrontation Clause.  Dkt. # 212, at 10.  Defendant asserts that Hart failed to subpoena McCarthy, the case engineer who prepared the laboratory report, to testify about the information and conclusions contained within the report and further failed to object to the admission of testimonial hearsay contained within the report.  Id. at 10-12.  The United States responds that no violation of the Confrontation Clause occurred because McCarthy's report was never introduced, due to a successful motion in limine by Hart.  Dkt. # 222, at 15.

The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions . . . the accused shall enjoy the right . . . to be confronted with the witnesses against him."  Crawford v. Washington, 541 U.S. 36, 38 (2004).  When a petitioner raises a claim that his right to confront witnesses against him was violated, the Court must "employ a multi-part inquiry to determine if the

right to confrontation has been violated.  [The Court] examine[s] (1) whether the challenged evidence is hearsay; (2) whether it is testimonial; and (3) if the evidence is testimonial hearsay, whether its introduction was harmless error."  United States v. Mendez, 514 F.3d 1035, 1043 (10th Cir. 2008) (citing United States v. Summers, 414 F. 3d 1287, 1299-1303 (10th Cir. 2005)).

"Confrontation Clause errors are subject to . . . harmless-error analysis.  Littlejohn v. Trammel, 704 F.3d 817, 844-45 (10th Cir. 2013) (citing Delaware v. Van Ardsall, 475 U.S. 673, 684 (1986)); see Coy v. Iowa, 487 U.S. 1012, 1021-22 (1988); United States v. Robinson, 583 F.3d 1265, 1275-76 (10th Cir. 2009); cf. Bullcoming v. New Mexico, 131 S. Ct. 2705, 2519 (2011)). According to Brecht v. Abrahamson, 507 U.S. 619 (1993), " the Confrontation Clause harmless-error analysis [is] a somewhat different shade."  Littlejohn, 704 F.3d at 844-45.  In Brecht, the Supreme Court concluded that "habeas petitions may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  507 U.S. at 637 (citing United States v. Lane, 474 U.S. 438, 449 (1986)).  In determining whether error was harmless in the context of a Confrontation Clause violation raised in a habeas petition, the court will "consider factors such as the 'importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case.'"  Littlejohn, 704 F.3d at 845 (quoting Van Arsdall, 475 U.S. at 684; accord Jones v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000); see Wiggins v. Boyette, 635 F.3d 116, 121-22 (4th Cir. 2011)).

The Court need not conduct the three-part analysis to determine that defendant's argument lacks merit.  McCarthy's laboratory report was never introduced at trial, rendering any need to examine McCarthy about the contents of the report non-existent.  Before trial, Hart successfully argued a motion in limine which resulted in the exclusion of McCarthy's report at trial, provided that Hart did not open the door to the introduction of this report.  Dkt. # 180, at 34.  And Hart did not open the door to McCarthy's testimony, believing this to be the best course of action for defendant.  Dkt. # 222-3, at 3-4.  Because the report was never introduced, there was no violation of the Confrontation Clause.  As such, Hart was not ineffective for failing to object to such a violation. Cf. Sperry, 455 F.3d at 1275 (finding no ineffective assistance for failing to raise frivolous argument on appeal).  Ground five of defendant's motion should be denied.

### III.

The Court has construed defendant's § 2255 motion broadly and can discern no other claims for relief.  The Court finds that defendant has failed to demonstrate that his trial or sentencing counsel's performance was constitutionally deficient.  Section 2255 provides that the district court shall conduct a hearing unless the motion and record conclusively show that defendant is entitled to no relief.  In this case, the Court concludes that the record conclusively shows defendant is entitled to no relief, and a hearing is unnecessary.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 222) is **denied**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's request an evidentiary hearing is **denied**. His request for appointment of counsel is **denied as moot**.

15

**DATED** this 23rd day of August, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE